UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

| | | |
|---|---|---|
| LARRY A. LAWRENCE #321514, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 2:05-cv-227 |
| | ) | |
| v. | ) | HON. ROBERT HOLMES BELL |
| | ) | |
| WILLIAM A. WARREN, | ) | |
| | ) | **OPINION** |
| Defendant. | ) | |
| _____ | ) | |

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The court has granted Plaintiff leave to proceed *in forma pauperis*, and Plaintiff has paid the initial partial filing fee. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996) ("PLRA"), the court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 42 U.S.C. § 1997e(c); 28 U.S.C. §§ 1915(e)(2), 1915A. The court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520, 92 S. Ct. 594, 595 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33, 112 S. Ct. 1728, 1733 (1992). Applying these standards, the court will dismiss Plaintiff's complaint for failure to state a claim.

**Discussion**

I.     Factual Allegations

Plaintiff Larry A. Lawrence, an inmate at Camp Cusino, filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Defendant Dr. William A. Warren, M.D, who is employed at the Newberry Correctional Facility (NCF). Plaintiff states that on November 1, 2003, while he was confined at NCF, he complained to housing staff about dizzy spells. Plaintiff then spoke to a nurse on the phone, during which he described suffering from dizzy spells which incapacitated him for one to two hours, cold sweats, and feeling like he was going to "pass out." On November 2, 2003, he was seen by Blakley, R.N., and was scheduled to see the doctor. On November 4, 2003, Plaintiff was seen by Defendant, who did an EKG and a blood sugar test. Plaintiff was instructed to "take it easy."

On December 10, 2003, Plaintiff noticed a malodorous yellowish discharge coming from his right ear. On December 16, 2003, Plaintiff kited heath care, complaining of the discharge, a decrease in his hearing and dizziness. On December 17, 2003, Plaintiff was seen by D. Quinlan, R.N., in response to the kite. Plaintiff was also seen by Defendant who prescribed "eye drops" for use in Plaintiff's ear. On December 28, 2003, Plaintiff kited health care that he was still having drainage and the prescribed eye drops were almost gone. On December 30, 2003, Plaintiff was seen by the nurse, who scheduled him to see the doctor. On January 5, 2004, Plaintiff was seen by Defendant, who prescribed ear drops for 30 days. On January 6, 2004, Plaintiff fell in the day room while having a dizzy spell, and was taken to medical. Plaintiff's blood pressure was 170/90 initially. When Plaintiff's blood pressure was down to 136/84, the nurse released Plaintiff with instructions to lie down in his bunk. Later that day, Defendant examined Plaintiff by taking his head and turning

- 2 -

it slowly from side to side.  Defendant then asked Plaintiff if he felt dizzy, and Plaintiff replied "no."
Defendant then had Plaintiff sit in a chair, and then stand up, asking each time if Plaintiff was dizzy.
When Plaintiff stated that he did not feel dizzy, Defendant sent him back to his cell and told him to
take it easy.  Defendant did not examine Plaintiff's ear.

On February 5, 2004, Plaintiff kited health care complaining that he was experiencing
continuous drainage from his ear and that his hearing was rapidly worsening.  In addition, Plaintiff
stated that he was still experiencing dizzy spells.  Defendant saw Plaintiff on February 9, 2004, and
was given an additional 30 days of ear drops.  On April 25, 2004, Plaintiff kited medical because he
was still experiencing the same symptoms.  On April 28, 2004, Defendant again prescribed ear drops
for 30 days.  On May 3, 2004, the nursed instructed Plaintiff not to eat or drink after 9:00 p.m.
because he was scheduled for a blood test in the morning.

On May 5, 2004, Plaintiff was transferred to the Ryan Road Correctional Facility,
where he remained for a few months.  During this time, Plaintiff was seen by health care on several
occasions due to his continued dizziness, ear drainage, and hearing difficulties and was continued
on ear drops.  On August 27, 2004, Plaintiff was transferred to the Cooper Street Correctional
Facility (JCS), where he was prescribed continued treatment with ear drops.  On September 7, 2004,
Plaintiff was cleared for transfer with orders for a Medical Service Provider follow-up on October 2,
2004, for "chronic otitis media."  Plaintiff was transferred to Camp Cusino on September 8, 2004,
where it was noted that he had an "ear infection."  On September 30, 2004, Plaintiff was seen by Dr.
Olson, who prescribed ear drops and antibiotic pills.  On October 12, 2004, Plaintiff was referred
to an Ear, Nose and Throat (ENT) Specialist.  On November 6, 2004, Plaintiff was seen by the ENT
Specialist, who diagnosed a possible cyst in Plaintiff's right ear and determined that Plaintiff would

likely need surgery.  On December 3, 2004, the ENT cleaned Plaintiff's right ear under the microscope and performed an audiogram.  Plaintiff was given stronger antibiotics and more ear drops.  A bone scan was ordered, which showed that Plaintiff did indeed have a cyst.  Plaintiff finally had surgery on March 4, 2005, which ultimately resolved Plaintiff's medical condition.

Plaintiff claims that Defendant's conduct violated his Eighth Amendment rights and caused Plaintiff irreparable harm, permanent disfigurement, and needless pain and suffering. Plaintiff seeks compensatory and punitive damages.

## II.    Lack of exhaustion of available administrative remedies

Plaintiff has failed to sufficiently allege and show exhaustion of available administrative remedies.  Pursuant to 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001).  The exhaustion requirement is mandatory and applies to all suits regarding prison conditions, regardless of the nature of the wrong or the type of relief sought.  *Porter*, 534 U.S. at 516; *Booth*, 532 U.S. at 741.  A district court must enforce the exhaustion requirement sua sponte.  *Brown v. Toombs*, 139 F.3d 1102, 1104 (6th Cir.), *cert. denied*, 525 U.S. 833, 119 S. Ct. 88 (1998); *accord Wyatt v. Leonard*, 193 F.3d 876, 879 (6th Cir. 1999).

A prisoner must allege and show that he has exhausted all available administrative remedies and should attach to his § 1983 complaint the administrative decision disposing of his complaint, if the decision is available.  *Brown*, 139 F.3d at 1104.  In the absence of written documentation, the prisoner must describe with specificity the administrative proceeding and its outcome so that the court may determine what claims, if any, have been exhausted.  *Knuckles El v.*

*Toombs*, 215 F.3d 640, 642 (6th Cir.), *cert. denied*, 531 U.S. 1040, 121 S. Ct. 634 (2000).  A prisoner must specifically mention the involved parties in the grievance to make prison officials aware of the problems so that the prison has a chance to address the claims before they reach federal court.  *Curry v. Scott*, 249 F.3d 493, 505 (6th Cir. 2001).

Plaintiff's claim of inadequate medical care is the of claim that may be grieved.  *See* MICH. DEP'T OF CORR., Policy Directive 03.02.130, ¶ E (may grieve "alleged violations of policy and procedure or unsatisfactory conditions of confinement") (effective Nov. 1, 2000).  The burden to allege and show exhaustion belongs to Plaintiff.  *See* 42 U.S.C. § 1997e(a); *Knuckles El*, 215 F.3d at 642; *Brown*, 139 F.3d at 1104.  This requirement is "so that the district court may intelligently decide if the issues raised can be decided on the merits."  *Knuckles El*, 215 F.3d at 642.

Plaintiff states that he filed a step I grievance, but that he never received a response. Plaintiff claims that because of the lack of response, he did not file a step II or III grievance.  A plaintiff must pursue all levels of the administrative procedure before filing an action in federal court.  *See Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999) ("While we recognize that plaintiff made some attempt to go through the prison's grievance procedures, we must dismiss plaintiff's complaint because he filed his federal complaint before allowing the administrative process to be completed.").  If the grievant does not receive a timely Step I response, the grievant may appeal to Step II within five business days after the date the response was due.  MICH. DEP'T OF CORR., Policy Directive 03.02.130, ¶ CC (effective 4/28/03).  In addition, if the grievant does not receive a timely Step II response, the grievant may appeal to Step III within ten business days after the date the response was due.  MICH. DEP'T OF CORR., Policy Directive 03.02.130, ¶ GG (effective

4/28/03).  Because Plaintiff failed to file step II or III grievances in this case, the Court finds that Plaintiff has failed to demonstrate exhaustion of available administrative remedies.

It is not clear whether Plaintiff may still grieve his claims.  Under the policy of the prison, complaints must be resolved expeditiously, and complaints may be rejected as untimely.  *See* Policy Directive 03.02.130, ¶¶ G-3, T, V.  The Sixth Circuit held that an inmate cannot claim that "he has exhausted his remedies or that it is futile for him to do so because his grievance is now time-barred under the regulations." *Hartsfield v. Vidor*, 199 F.3d 305, 309 (6th Cir. 1999) (citing *Wright v. Morris*, 111 F.3d 414, 417 n.3 (6th Cir.), *cert. denied*, 522 U.S. 906 (1997).

Because the exhaustion requirement is no longer discretionary, but is mandatory, the Court does not have the discretion to provide a continuance in the absence of exhaustion.  *See Wright*, 111 F.3d at 417.  Rather, dismissal of this action without prejudice is appropriate when a prisoner has failed to show that he exhausted available administrative remedies. *See Freeman*, 196 F.3d at 645; *Brown*, 139 F.3d at 1104; *White v. McGinnis*, 131 F.3d 593, 595 (6th Cir. 1997); *Bradford v. Moore*, No. 97-1909, 1998 WL 476206, at *1 (6th Cir. Aug. 3, 1998). Dismissal for failing to exhaust available administrative remedies does not relieve a plaintiff from payment of the civil action filing fee.  *Omar v. Lesza*, No. 97 C 5817, 1997 WL 534361, at *1 (N.D. Ill. Aug. 26, 1997).  Accordingly, the Court may dismiss his action without prejudice.

However, the Court need not first require exhaustion of available administrative remedies when the claim may be dismissed because it is, "on its face, frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief."  42 U.S.C. § 1997e(c)(2); *Brown v. Toombs*, 139 F.3d 1102, 1103 (6th Cir.), *cert. denied*, 525 U.S. 833 (1998).  Because Plaintiff's complaint fails to state a claim upon

- 6 -

which relief can be granted, the court will dismiss his action without first requiring Plaintiff to exhaust any available administrative remedies.

       III.    <u>Failure to state a claim</u>

       A complaint fails to state a claim upon which relief can be granted when it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint. *Jones v. City of Carlisle*, 3 F.3d 945, 947 (6th Cir. 1993), *cert. denied*, 510 U.S. 1177, 114 S. Ct. 1218 (1994). To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48, 108 S. Ct. 2250, 2255 (1988); *Street v. Corrections Corp. of America*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271, 114 S. Ct. 807, 811 (1994).

       The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

       A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the

- 7 -

plaintiff must allege that the medical need at issue is sufficiently serious.  *Id.*  In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.*  The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo County*, 390 F.3d 890, 2004 WL 2792016, at *7 (6th Cir. 2004).  If, however the need involves "minor maladies or non-obvious complaints of a serious need for medical care," *Blackmore*, 2004 WL 2792016, at *6, the inmate must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." *Napier v. Madison County, Kentucky*, 238 F.3d 739, 742 (6th Cir. 2001).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farme*r, 511 U.S. at 834).  Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105.  As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind.  Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.  In

order to state a cognizable claim, a prisoner must allege acts or
omissions sufficiently harmful to evidence deliberate indifference to
serious medical needs.

*Estelle*, 429 U.S. at 105-06 (quotations omitted). Thus, differences in judgment between an inmate

and prison medical personnel regarding the appropriate medical diagnoses or treatment are not

enough to state a deliberate indifference claim. *Sanderfer*, 62 F.3d at 154-55; *Ward v. Smith*, No.

95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996). This is so even if the misdiagnosis results

in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-

5050, 1997 WL 160322, at *2 (6th Cir. April 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a

complete denial of medical care and those cases where the claim is that a prisoner received

inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir. 1976). Where,

as here, "a prisoner has received some medical attention and the dispute is over the adequacy of the

treatment, federal courts are generally reluctant to second guess medical judgments and to

constitutionalize claims which sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5

(6th Cir. 1976); *see also*, *Brock v. Crall*, No. 00-5914, 2001 WL 468169, at *2 (6th Cir. April 27,

2001); *Jones v. Martin*, 5 Fed. Appx. 434, *cert. denied*, 534 U.S. 833 (2001); *Williams v. Mattson*,

No. 99-1796, 2000 WL 924145, at *1 (6th Cir. June 28, 2000); *Davis v. Ulep*, No. 97-2124, 1999

WL 98390, at *1 (6th Cir. Jan. 29, 1999); *Cain v. Huff*, No. 96-1613, 1997 WL 377029, at * 4 (6th

Cir. July 2, 1997); *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at * 2 (6th Cir. April 4,

1997). The court concludes that this case is similar to *Westlake* in that Plaintiff received medical

treatment for his ailment and that his complaint is actually with regard to the adequacy of that

- 9 -

treatment.  Therefore, Plaintiff's complaint does not rise to the level of an Eighth Amendment violation.

<u>**Conclusion**</u>

Having conducted the review now required by the Prison Litigation Reform Act, the court determines that Plaintiff's action fails to state a claim and will therefore be dismissed pursuant to 28 U.S.C. §§ 1915(e)(2), 1915A(b); 42 U.S.C. § 1997e(c).

The court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3).  *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997).  For the same reasons that the court dismisses the action, the court discerns no good-faith basis for an appeal.  Should Plaintiff appeal this decision, the court will assess the $255 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g).  If he is barred, he will be required to pay the $255 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.

Date:    November 7, 2005            /s/ Robert Holmes Bell
                                     ROBERT HOLMES BELL
                                     CHIEF UNITED STATES DISTRICT  JUDGE